**No. 25-\_\_\_\_\_**

# In the United States Court of Appeals
## FOR THE FOURTH CIRCUIT

BRUCE KONYA, SIMON SHIFF, STEPHEN SCHWARZ, and DIANA
VASQUEZ, individually and as representatives of a class of participants
and beneficiaries on behalf of the Lockheed Martin Corporation
Salaried Employee Retirement Program and the Lockheed Martin
Aerospace Hourly Pension Plan,

*Plaintiffs-Respondents*,

v.

LOCKHEED MARTIN CORPORATION,

*Defendant-Petitioner*.

On Petition for Permission to Appeal from the United States District Court
for the District of Maryland, No. 24-cv-750-BAH

**LOCKHEED MARTIN'S PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

CHRISTOPHER J. BORAN
SAMUEL D. BLOCK
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, IL 60606
(312) 324-1000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5893

NICOLE A. SAHARSKY
REGINALD GOEKE
E. BRANTLEY WEBB
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000

NANCY ROSS
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-8788

*Counsel for Lockheed Martin Corporation*

## CORPORATE DISCLOSURE STATEMENT

In accordance with <u>Federal Rule of Appellate Procedure 26.1</u> and Local Rule 26.1, Defendant-Petitioner Lockheed Martin Corporation makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?

Yes.

2.      Does party/amicus have any parent corporations?

No.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?

No.

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?

No.

5.      Is party a trade association?

No.

6.      Does this case arise out of a bankruptcy proceeding?

No.

7.      Is this a criminal case in which there was an organizational victim?

No.

Dated: August 1, 2025                         s/ Michael E. Kenneally
                                              MICHAEL E. KENNEALLY

                                              *Counsel for Defendant-Petitioner*

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................1

QUESTION PRESENTED ......................................................................4

STATEMENT ....................................................................................4

    A.    Factual Background...................................................................4

    B.    Procedural History...................................................................5

        1.    Plaintiffs' Claims .........................................................5

        2.    The District Court's Motion-to-Dismiss Decision ...................6

        3.    The District Court's Certification Order..................................8

REASONS FOR GRANTING THE PETITION ...........................................9

    A.    The standing question is a controlling question of law.....................10

        1.    The standing question is legal...........................................10

        2.    The standing question is "controlling." .................................11

    B.    Substantial ground for difference of opinion exists on that question. ..............................................................................12

        1.    Reasonable minds can disagree on the standing question. ......13

        2.    Courts have disagreed on the standing question.....................16

        3.    What is needed to plead Article III standing to challenge pension risk transfer transactions is a question of first impression in this Circuit. ........................................18

    C.    Immediate review will materially advance resolution of this case. ..............................................................................19

CONCLUSION..................................................................................22

CERTIFICATE OF COMPLIANCE......................................................23

CERTIFICATE OF SERVICE .............................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. S. Produce Distribs., Inc.,*
2021 WL 394842 (E.D.N.C. Feb. 4, 2021) ......................................................12

*APCC Servs., Inc. v. AT&T Corp.,*
297 F. Supp. 2d 101 (D.D.C. 2003) ...............................................................19

*Bueno v. Gen. Elec. Co.,*
No. 24-cv-822 (N.D.N.Y.) ...............................................................................6

*Butler v. DirectSAT USA, LLC,*
307 F.R.D. 445 (D. Md. 2015) ........................................................................10

*Camire v. Alcoa USA Corp.,*
2025 WL 947526 (D.D.C. Mar. 28, 2025) ........................................3, 16, 17, 18

*Camire v. Alcoa USA Corp.,*
No. 24-cv-1062 (D.D.C.) ..................................................................................6

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .............................................................6, 13, 15, 17

*Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ.*
*Comm'n,*
2015 WL 4040425 (D. Md. June 29, 2015)..........................10, 11, 16, 19

*Commonwealth of Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.,*
2015 WL 3540473 (E.D. Va. June 3, 2015) ...................................................19

*Cooke-Bates v. Bayer Corp.,*
2010 WL 4789838 (E.D. Va. Nov. 16, 2010) .............................................12, 18

*David v. Alphin,*
704 F.3d 327 (4th Cir. 2013) ......................................................................*passim*

*Dempsey v. Verizon Commc'ns Inc.,*
No. 24-cv-10004 (S.D.N.Y.)...........................................................................6

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Doherty v. Bristol-Myers Squibb Co.*,
  No. 24-cv-6628 (S.D.N.Y.) ............................................................... 6

*Dow v. Lumen Techs., Inc.*,
  No. 24-cv-2434 (D. Colo.) ................................................................ 6

*Fairholme Funds, Inc. v. United States*,
  147 Fed. Cl. 126 (Fed. Cl. 2020) .................................................... 12

*Fannin v. CSX Transp., Inc.*,
  873 F.2d 1438, 1989 WL 42583 (4th Cir. Apr. 26, 1989) ................... 11

*Hirsch v. Blue Cross & Blue Shield of Md., Inc.*,
  1991 WL 502004 (D. Md. Dec. 26, 1991) ........................................ 10

*In re Va. Elec. & Power Co.*,
  539 F.2d 357 (4th Cir. 1976) .......................................................... 20

*Kennedy v. St. Joseph's Ministries, Inc.*,
  657 F.3d 189 (4th Cir. 2011) .................................................... 10, 20

*Kennedy v. Villa St. Catherine, Inc.*,
  2010 WL 9009364 (D. Md. June 16, 2010) .................................. 20, 21

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro*
  *in Amministrazione Straordinaria*,
  921 F.2d 21 (2d Cir. 1990) ............................................................ 18

*KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.*,
  250 B.R. 74 (Bankr. E.D. Va. 2000) ................................................ 12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................. 13, 21

*Maneman v. Weyerhaeuser*,
  No. 24-cv-2050 (W.D. Wash.) ........................................................... 6

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ....................................................................... 18

iv

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Mwani v. bin Laden*,
  947 F. Supp. 2d 1 (D.D.C. 2013)........................................................18

*Opiotennione v. Bozzuto Mgmt. Co.*,
  130 F.4th 149 (4th Cir. 2025) ...........................................................13

*Peters v. Aetna Inc.*,
  2 F.4th 199 (4th Cir. 2021) ....................................................8, 15, 16

*Piercy v. AT&T Inc.*,
  No. 24-cv-10608 (D. Mass.) ................................................................6

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007) ........................................................16

*Reese v. BP Expl. (Ala.) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .............................................................12

*Schoen v. ATI, Inc.*,
  No. 24-cv-1109 (W.D. Pa.) ..................................................................6

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020)...................................................................*passim*

*TransUnion v. Ramirez*,
  594 U.S. 413 (2021) ...........................................................................13

*United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*,
  173 F. Supp. 3d 320 (E.D. Va. 2016) ...............................................12

*United States ex rel. Michaels v. Agape Senior Cmty. Inc.*,
  848 F.3d 330 (4th Cir. 2017) .......................................................10, 11

**STATUTES**

28 U.S.C. § 1292 .......................................................................*passim*

v

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Employee Retirement Income Security Act

    29 U.S.C. § 1104 ................................................................5

    29 U.S.C. § 1106 ................................................................5

    29 U.S.C. § 1341 ............................................................1, 4

**RULES**

FED. R. CIV. P. 12 ..................................................................22

**OTHER AUTHORITIES**

16 Wright, et al., *Federal Practice & Procedure* § 3930 ........................................11

## INTRODUCTION

This petition seeks interlocutory review of an important and recurring legal question about Article III standing: whether a plaintiff can meet Article III's injury-in-fact requirement by pleading a mere increased risk of future injury—here, an unquantified risk that pension benefits might not be paid at some indefinite future time. As the district court recognized, this is a paradigmatic case for interlocutory review. The standing issue is a controlling question of law on which reasonable minds can disagree (and already have disagreed), and its resolution could end this litigation, preventing years of wasted court and litigant effort. The need for this Court's review is so clear that Plaintiffs do not oppose this petition.

This case is part of a wave of cases brought under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, to challenge so-called pension risk transfers. In these routine transactions, an employer transfers assets needed to fund future pension liability to an insurance company under an annuity contract; the insurer then assumes full responsibility for making all future pension payments to all affected retirees and beneficiaries. Although ERISA expressly allows these transactions, *see* 29 U.S.C. § 1341, Plaintiffs contend that an employer violates ERISA if it does not choose the safest possible insurer. According to Plaintiffs, they have standing to challenge these transactions because they increase the risk that their pension benefits might not be paid at some future time.

1

Plaintiffs are wrong about ERISA and about pension risk transfers; those transactions have proved safe. But Plaintiffs have a threshold problem: they have not pleaded any actual or imminent injury and thus lack Article III standing. Plaintiffs have no actual injury because they admit they have received all their pension benefits to date, and they remain legally entitled to those same benefits for life. And Plaintiffs face no imminent injury, because they allege no substantial and impending risk of losing their benefits. Instead, Plaintiffs merely speculate that there is an increased chance they might not receive benefits at some indeterminate future time.

The district court held that Plaintiffs' claimed increased risk of future injury is enough to establish Article III standing, but "only barely." Finding it a "close call," and recognizing that another district court recently reached the opposite conclusion in "nearly identical" circumstances, the district court certified its decision for interlocutory review under 28 U.S.C. § 1292(b).

This Court should grant interlocutory review. All three Section 1292(b) requirements are met. First, the question whether a mere increased risk that pension benefits might not be paid qualifies as an Article III injury is a controlling legal question. It is a purely legal issue that can be resolved on the face of the complaint, without any need for factual development. And it is a controlling question, because it is a crucial threshold issue about whether Plaintiffs can go forward at all.

2

Second, substantial ground for difference of opinion exists on that issue. As the district court recognized, another district judge reached the opposite conclusion and dismissed a nearly identical lawsuit on Article III standing grounds, and more decisions on the same issue are undoubtedly coming. *See Camire v. Alcoa USA Corp.*, 2025 WL 947526 (D.D.C. Mar. 28, 2025).

There is ample reason to doubt the district court's holding here. Plaintiffs' theory that a vague increase in risk establishes an Article III injury contravenes Supreme Court precedent, which teaches that an imminent, substantial risk of harm is required. Most notably, in *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544-47 (2020), the Supreme Court held that defined-benefit plan participants (like Plaintiffs here) failed to plead an Article III injury when they alleged that pension plan fiduciaries breached their ERISA duties and caused the plan to be underfunded, because the plaintiffs did not allege that the breaches caused them any actual or imminent benefit losses. Given that teaching and other similar binding precedent, this Court should take a close look at standing before this lawsuit proceeds.

Third, an immediate appeal could materially advance the resolution of this case. A holding that Plaintiffs lack Article III standing will dispose of their claims. An appeal would also ensure that this case moves forward efficiently, conserve resources, and provide important guidance for other cases arising from the common use of pension risk transfers to manage defined-benefit pension plans.

3

Section 1292(b) is designed for cases just like this one, where there is a square conflict between district courts on a threshold legal issue and a pressing need for the Court's guidance. This Court should permit interlocutory review.

## QUESTION PRESENTED

Whether a complaint plausibly pleads Article III standing through allegations that defendants increased the risk that plaintiffs might not receive their pension payments at some future point, without plausibly alleging that such harm is certainly impending or has a substantial risk of occurring.

## STATEMENT

### A.    Factual Background

Plaintiffs are retirees who contend that Lockheed Martin violated ERISA with respect to two pension risk transfer transactions involving Lockheed Martin's defined benefit pension plans. D. Ct. Dkt. 79 (Order) 3-9.

ERISA allows an employer to manage its pension obligations by transferring pension plan assets and liability to an insurance company under one or more annuity contracts. Order 4-5; 29 U.S.C. § 1341. Lockheed Martin engaged in two such transactions in 2021 and 2022, with Athene being selected as the insurance company. Order 5-6.[1] Thus, Lockheed Martin transferred to Athene both plan assets needed to

---

[1] "Athene" refers to two insurance companies, Athene Annuity and Life Company and Athene Annuity & Life Assurance Company of New York. D. Ct. Dkt. 1, ¶ 3.

fund Plaintiffs' and other retirees' and beneficiaries' future benefit payments, and liability for making those payments. D. Ct. Dkt. 1 (Compl.) ¶¶ 58-59.

Plaintiffs acknowledge that they have received all of their monthly pension payments since the above transactions, and that they remain legally entitled to those payments for the rest of their lives. Order 8. Nonetheless, they argue that Lockheed Martin put their future pension payments at risk by selecting Athene instead of another annuity provider. *Id.* at 7-8. According to Plaintiffs, Athene is riskier than "traditional annuity providers," and ERISA required Lockheed Martin to select the "safest possible annuity [provider]." *Id.* (citation omitted).

### B.    Procedural History

#### 1.    Plaintiffs' Claims

Plaintiffs filed suit against Lockheed Martin under ERISA to challenge the transfer of pension assets and liabilities to Athene. The complaint includes three claims. First, Plaintiffs allege that Lockheed Martin breached its fiduciary duties under 29 U.S.C. § 1104(a)(1)(A)-(B) by selecting Athene. Order 8. Second, Plaintiffs allege that purchasing Athene annuities was a "prohibited transaction" under 29 U.S.C. § 1106(a)-(b). *Id.* at 9. And third, Plaintiffs allege that Lockheed Martin failed to adequately monitor other (unidentified) fiduciaries in connection with the selection of Athene as the pension plans' annuity provider. *Id.* Plaintiffs seek injunctive relief, including disgorgement of the cost savings derived from the

allegedly unlawful transactions and the posting of security to assure that they receive their full benefits. *Id.* Notably, the allegations in this case are materially similar to allegations in complaints plaintiffs filed in eight other pending cases.[2]

### 2.    The District Court's Motion-to-Dismiss Decision

Lockheed Martin moved to dismiss on the ground that Plaintiffs lack Article III standing. D. Ct. Dkt. 26-1. Lockheed Martin explained that Plaintiffs alleged no "concrete" injury that is either "actual or imminent." *Id.* at 9-16. Plaintiffs have suffered no *actual* injury because, like the plaintiffs in *Thole*, "[t]hey have received all of their vested pension benefits so far, and they are legally entitled to receive [the] same monthly payments for the rest of their lives." 590 U.S. at 547; D. Ct. Dkt. 26-1 at 12-13. And Plaintiffs do not face an *imminent* injury, because they have alleged no facts plausibly showing a "substantial risk" that Athene, which has an A+ credit rating, will become insolvent and stop making their future pension payments and that this feared future injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401, 414 & n.5 (2013); D. Ct. Dkt. 26-1 at 10-11, 16. The most Plaintiffs allege is that Athene is "riskier" than other insurers. D. Ct. Dkt. 26-1 at 11-

---

[2] *See Camire v. Alcoa USA Corp.*, No. 24-cv-1062 (D.D.C.); *Bueno v. Gen. Elec. Co.*, No. 24-cv-822 (N.D.N.Y.); *Piercy v. AT&T Inc.*, No. 24-cv-10608 (D. Mass.); *Maneman v. Weyerhaeuser*, No. 24-cv-2050 (W.D. Wash.); *Schoen v. ATI, Inc.*, No. 24-cv-1109 (W.D. Pa.); *Dow v. Lumen Techs., Inc.*, No. 24-cv-2434 (D. Colo.); *Doherty v. Bristol-Myers Squibb Co.*, No. 24-cv-6628 (S.D.N.Y.); *Dempsey v. Verizon Commc'ns Inc.*, No. 24-cv-10004 (S.D.N.Y.).

12; *David v. Alphin*, 704 F.3d 327, 336-38 (4th Cir. 2013) ("We find these risk-based theories of standing unpersuasive[.]"). Finally, Plaintiffs cannot satisfy Article III by alleging a bare statutory violation or by seeking equitable relief. D. Ct. Dkt. 26-1 at 12-13 n.18; *see Thole*, 590 U.S. 538; *David*, 704 F.3d at 338.

The district court nonetheless held that Plaintiffs "barely" established standing. Order 19. The court noted that Plaintiffs had not alleged any disruption in their benefit payments. *Id.* at 16. But the court decided that Plaintiffs had plausibly alleged an injury based on a potential future loss of benefits. Citing Athene's alleged riskiness compared to other insurers, the court concluded that "Plaintiffs have adequately alleged facts, if only barely so, sufficient to conclude there is 'a substantially increased risk' that Athene will fail and Plaintiffs[] will suffer harm because of it." *Id.* at 17-19. According to the court, this was enough for Plaintiffs to "eke[] out sufficient injury-in-fact to establish standing." *Id.* at 20.

The district court then decided that, even without an actual or imminent loss of benefits, Plaintiffs had an "alternative basis for standing in trust law," because they seek "equitable relief" for an alleged "breach of fiduciary duty." *Id.* at 24. The Supreme Court had already rejected this same "trust-based theory of standing" in *Thole*, explaining that "participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust," and "Article III requires a concrete injury even in the context of a statutory [fiduciary-breach] violation." 590 U.S. at

542-44; *accord David*, 704 F.3d at 336. Nonetheless, the district court stated that it was "constrained" to accept Plaintiffs' alternative theory of standing based on *Peters v. Aetna Inc.*, 2 F.4th 199, 221 (4th Cir. 2021)—a decision that did not involve a defined benefit pension plan and did not even mention *Thole* (or *David*).

### 3.    The District Court's Certification Order

The district court certified its order for interlocutory review under 28 U.S.C. § 1292(b). D. Ct. Dkt. 90 (Certification Order). The court determined that each requirement for interlocutory review is satisfied. First, the court explained that whether Plaintiffs have sufficiently pleaded an injury in fact is "a legal question" that "does not require the appellate court to delve beyond the surface of the record" to decide, and it is a "controlling" question because "the case would not move forward in its present form" if "a higher court decided the issue differently." *Id.* at 7 (citation and quotation marks omitted).

Second, the court concluded that there is a "substantial basis for difference of opinion" on the issue. Certification Order 8. The court noted that, on the same day it issued its decision, "Judge Loren Alikhan of the United States District Court for the District of Columbia granted a motion to dismiss" in a case with allegations "similar to the case at bar." *Id.* at 3. That disagreement shows that reasonable jurists disagree about the result. *Id.* at 8. The court also noted that, because several other pending cases present the same issue, "[m]ore decisions on the same question are

undoubtably coming." *Id.* This "clear disagreement between district courts, coupled with the likelihood that the same question will be decided differently in other courts" shows that the second requirement for interlocutory review is met. *Id.*

Third, the district court concluded that an interlocutory appeal could materially advance the termination of the litigation. Certification Order 9-10. The court explained that "if the Fourth Circuit were to rule that Plaintiffs lack standing, the case would not move forward in its present form, if it moves forward at all." *Id.* at 9. And even if Plaintiffs were granted leave to amend their complaint following a reversal by this Court, the Court's decision would provide important guidance about what allegations are required to establish standing. *Id.* at 10. The district court noted that, because "costly litigation related to [pension risk transfers] to Athene are expanding," and "the only two district courts to decide the issue came to opposite conclusions as to viability of such claims, a final answer from the appellate court at this stage" would serve a key purpose of interlocutory review, which is "to avoid unnecessary litigation." *Id.* at 11.

Since that decision, Plaintiffs' counsel has confirmed that Plaintiffs no longer oppose interlocutory review.

## REASONS FOR GRANTING THE PETITION

This Court may permit an appeal from a district court's interlocutory order if (1) the "order involves a controlling question of law," (2) "as to which there is

substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see United States ex rel. Michaels v. Agape Senior Cmty. Inc.*, 848 F.3d 330, 340 (4th Cir. 2017). All three requirements are met here.

### A.    The standing question is a controlling question of law.

A "question of law" under Section 1292(b) is a "legal issue" that this Court can resolve "without having to delve beyond the surface of the record in order to determine the facts" of a particular case. *Michaels*, 848 F.3d at 340-41. A question of law is "controlling" if it "would result in reversal of a judgment after a final hearing." *Hirsch v. Blue Cross & Blue Shield of Md., Inc.*, 1991 WL 502004, at *5 (D. Md. Dec. 26, 1991). As the district court correctly held, the standing issue here presents a controlling question of law.

### 1.    The standing question is legal.

Questions of law include questions about "the meaning of a . . . constitutional provision." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (internal quotation marks omitted). Questions about whether a legal standard is satisfied in light of the "undisputed facts" also are questions of law. *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011) (emphasis omitted); *see, e.g.*, *Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ.*

10

*Comm'n*, 2015 WL 4040425, at \*4-5 (D. Md. June 29, 2015) ("application of a legal standard" is a "question of law" (citation omitted)).

As the district court explained, the question here is "a legal one": whether Plaintiffs' well-pleaded factual allegations, taken as true, plausibly establish an "injury in fact" for purposes of Article III. Certification Order 6-7. This is "an abstract legal issue" that this Court "can decide quickly and cleanly" on the face of Plaintiffs' complaint, without needing to "delve beyond the surface of the record in order to determine the facts." *Michaels*, 848 F.3d at 340-41 (citations omitted).

### 2. The standing question is "controlling."

Controlling questions include those "whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes," *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at \*5 (4th Cir. Apr. 26, 1989) (table), and those whose reversal "might save time for the district court, and time and expense for the litigants," *Coal. for Equity & Excellence*, 2015 WL 4040425, at \*4 (quoting 16 Wright, et al., *Federal Practice & Procedure* § 3930).

Whether Plaintiffs have sufficiently pleaded Article III standing is controlling because it is a threshold jurisdictional question. If this Court "decide[s] the [Article III standing] question differently, this case w[ill] not move forward in its present form." Certification Order 7. The complaint would be dismissed for lack of standing.

11

For this reason, courts repeatedly have recognized that threshold standing questions are controlling questions for Section 1292(b) purposes. *See, e.g.*, *KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.*, 250 B.R. 74, 79-82 (Bankr. E.D. Va. 2000) (bankruptcy trustee's standing was a controlling question of law under § 1292(b)); *Fairholme Funds, Inc. v. United States*, 147 Fed. Cl. 126, 129-30 (Fed. Cl. 2020) (certifying § 1292(d) review of "justiciability issues (standing and subject-matter jurisdiction) that could end plaintiffs' lawsuit"). The first Section 1292(b) requirement thus is met.

### B.     Substantial ground for difference of opinion exists on that question.

"[S]ubstantial ground for difference of opinion" exists on a legal question when "reasonable jurists might disagree" on the question's resolution. *Adams v. S. Produce Distribs., Inc.*, 2021 WL 394842, at *3 (E.D.N.C. Feb. 4, 2021) (quoting *Reese v. BP Expl. (Ala.) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). This requirement is met when courts have disagreed on the resolution of the question. *Cooke-Bates v. Bayer Corp.*, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010). So too when the question is "a novel and difficult [one] of first impression" on which the "controlling circuit" has not provided guidance. *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016). Here, reasonable minds already have disagreed on what plaintiffs must allege to establish standing in the

context of pension risk transfer transactions, and that question is an issue of first impression in the Circuit.

### 1. Reasonable minds can disagree on the standing question.

The question here is whether Plaintiffs have pleaded an Article III injury merely by alleging an increased risk that pension benefits may not be paid. Reasonable minds can disagree on that question. As the Supreme Court and this Court have made clear, Article III standing requires an "injury" that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see, e.g.*, *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021); *Clapper*, 568 U.S. at 409-10; *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025). And where, as here, the plaintiff has not been harmed but relies instead on a risk of future harm, the plaintiff must plead facts showing that the feared future harm is "certainly impending" or poses a "substantial risk" of occurring. *Clapper*, 568 U.S. at 414 & n.5.

The Supreme Court applied those principles in the ERISA context in *Thole*. That case, like this one, involved a defined-benefit pension plan. 590 U.S. at 540. The plaintiffs argued that plan fiduciaries violated ERISA by mismanaging plan assets and sought equitable relief, including "disgorgement of [defendants'] ill-gotten profits and fees, removal of the disloyal fiduciaries, and an injunction to stop the ongoing breaches." *Id.* at 551 (Sotomayor, J., dissenting). But the plaintiffs had

not alleged that they had suffered any injury—they "ha[d] been paid all of their monthly pension benefits so far, and they are legally and contractually entitled to receive those same monthly payments for the rest of their lives." *Id.* at 540 (majority opinion). Nor had they alleged substantial risk of future harm—that the plan "would fail and be unable to pay [their] future pension benefits." *Id.* at 546. The most the plaintiffs had pleaded was that the plan had been underfunded, but "a bare allegation of plan underfunding" is insufficient to show a substantial risk of harm. *Id.* Thus, plaintiffs lacked Article III standing. *Id* at 547.

Here, Plaintiffs likewise concede that they have received all of their benefits to date and that they are legally entitled to those same benefits for life. Order 8. They assert instead that they face an "increased and significant risk" that they might not receive benefits payments in the future. Compl. ¶ 73. But they do not plead facts plausibly demonstrating that they face any substantial risk of imminent harm; to the contrary, Plaintiffs concede that Athene is "one of the leading players" in the pension risk transfer market and meets all regulatory requirements for an insurer. *Id.* ¶¶ 47, 51. Indeed, unlike the plaintiffs in *Thole*, Plaintiffs do not even plead that their future benefits are underfunded. *See id.*

Instead, Plaintiffs rely on allegations about Athene's risk compared to other insurers. *See* Compl. ¶ 55. But even assuming that Athene is more likely to fail than other insurers, that does not show that Plaintiffs face a substantial risk that Athene

14

will in fact fail, let alone imminently. To illustrate: An increased risk from a one in a million chance of non-payment to a two in a million chance substantially increases relative risk (by 100%); but the absolute risk of non-payment (1 in 500,000) is still insubstantial. Further, Plaintiffs do not allege that they would lose pension benefits even if Athene were to fail and the plan assets Lockheed Martin originally transferred to Athene to fund Plaintiffs' future benefit payments proved insufficient; rather, Plaintiffs acknowledge that they still would be protected by state guaranty associations, and they do not allege that the value of their pension benefits exceeds the value of those guarantees. *Id.* ¶ 30. Reasonable minds thus could differ as to whether Plaintiffs have pleaded a "certainly impending" harm, or even a "substantial risk" of harm, *Clapper*, 568 U.S. 398 at 414 & n.5; *see David*, 704 F.3d at 338 ("[T]he risk that [plaintiffs'] pension benefits will at some point in the future be adversely affected as a result of the present alleged ERISA violations is too speculative to give rise to Article III standing.").

The district court relied on *Peters* as "counsel[ing] in favor of finding that Plaintiffs have standing." Order 21-24. This was error. The district court construed *Peters* to hold that merely alleging a "breach of [ERISA] fiduciary duty confers standing for disgorgement and other forward-looking equitable relief[.]" *Id.* at 24-25. But *Peters* involved a *health* plan and a plaintiff who had *already* experienced a monetary injury. 2 F.4th at 218-19. This case involves a pension plan where

plaintiffs have not experienced any such injury. And in *Thole*, the Supreme Court squarely rejected the notion that merely seeking equitable relief for alleged breaches of fiduciary duty confers Article III standing for defined-benefit plan participants. 590 U.S. at 542-44. *Peters* did not even cite *Thole*, let alone address its reasoning, presumably because of the fundamentally different benefit plans and circumstances at issue between the two cases. The district court thus erred in relying on *Peters* here—and at the very least, reasonable minds can differ on the point.

### 2.    Courts have disagreed on the standing question.

The two courts to have addressed the standing question have disagreed. The standing allegations about Athene here are "nearly identical" to those in *Camire*, Certification Order 7, and yet the *Camire* court concluded that the plaintiffs there had not established Article III standing, 2025 WL 947526, at *3-8.

In particular, the *Camire* court disagreed with the district court here on whether allegations that Athene might fail to pay pension benefits in the future is sufficient to confer standing. *Id.* at *6-7. For this theory to work, the plaintiffs needed to allege "'both (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account.'" *Id.* at *7 (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007)). The *Camire* plaintiffs did not meet this test, because they did "not allege that Athene is at a *high* risk of failure—just that it is at a *higher* risk of failure than other

16

annuity providers." *Id.* Further, the plaintiffs could not plausibly show that "any harm to [them] is 'certainly impending,'" given "several events that would need to take place before [they] could ever experience the harm they are concerned about." *Id.* (citing *Clapper*, 568 U.S. at 409-10).

With no allegation that any of these events was likely to occur, much less imminently, the *Camire* court could not "conclude that any harm to [p]laintiffs [was] 'certainly impending.'" 2025 WL 947526, at *7 (quoting *Clapper*, 568 U.S. at 410). In contrast, the district court here held that the same allegations were sufficient to "eke[] out" standing. Order 20.

The *Camire* court also disagreed with the district court here on whether merely alleging a breach of ERISA's fiduciary duties confers Article III standing to seek equitable relief. Relying on *Thole*, the *Camire* court held that pensioners did *not* have Article III standing to seek equitable relief absent an actual or imminent loss of pension benefits. 2025 WL 947526, at *5 & n.6 (citing 590 U.S. at 544). The *Camire* court thus squarely rejected the alternative argument the district court accepted here—that merely alleging a breach of fiduciary duty is sufficient to confer standing for "disgorgement and other forward-looking equitable relief." Order 24-25.

The diametrically opposed outcomes between this case and *Camire* on virtually identical complaints demonstrate that reasonable minds can disagree on the standing issue. *Cooke-Bates*, 2010 WL 4789838, at *2

### 3. What is needed to plead Article III standing to challenge pension risk transfer transactions is a question of first impression in this Circuit.

The Supreme Court has suggested that interlocutory review is particularly appropriate when an issue "involves a new legal question." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *see, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 23-25 (2d Cir. 1990) (noting "the impact that an appeal will have on other cases is a factor" in the § 1292(b) analysis, particularly when, as here, "the order involve[s] issues of . . . subject matter jurisdiction"). The dearth of authority increases the likelihood that another district court in the Circuit will reach a different result, leading to inconsistent results. *See Mwani v. bin Laden*, 947 F. Supp. 2d 1, 5-6 (D.D.C. 2013).

Here, the district court's decision is the first in this Circuit to address what is needed to plead Article III standing to challenge pension risk transfer transactions. Although existing precedent from the Supreme Court and this Court addresses Article III standing in the defined-benefit plan context, *see Thole*, 590 U.S. at 542-47; *David*, 704 F.3d at 334-39, this Court has not yet applied that precedent in a case

18

involving a pension risk transfer. Further, as the district court recognized, this issue is bound to recur. Certification Order 8. "More decisions on the same question are undoubtedly coming," which increases "the likelihood that the same question will be decided differently in other courts." *Id.* An interlocutory appeal thus would provide needed guidance to courts and litigants in this Circuit.

### C.    Immediate review will materially advance resolution of this case.

An immediate appeal could materially advance the resolution of a case where the appeal "might avoid protracted and expensive litigation." *Commonwealth of Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015) (citation omitted). For example, an interlocutory could advance the litigating by "eliminat[ing] the need for trial," "eliminat[ing] complex issues so as to simplify the trial," or "eliminat[ing] issues to make discovery easier and less costly." *Coal. for Equity*, 2015 WL 4040425, at *6-7. In those circumstances, review can "conserve judicial resources and spare the parties from possibly needless expense if it should turn out that [the] [c]ourt's rulings are reversed." *APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 109 (D.D.C. 2003).

Here, if the Court rules that Plaintiffs lack Article III standing, that ruling will dispose of all claims and terminate the case. The parties would not have to undergo lengthy and burdensome discovery and adjudication of the claims on the merits,

19

because Plaintiffs' claims would fail at the threshold. That is, "if [this Court] were to rule that Plaintiffs lack standing, the case would not move forward in its present form, if it moves forward at all." Certification Order 9. That would avoid the time and expense of fact discovery, third-party discovery of Athene, and expert discovery—not to mention motion practice, potential trial, and eventual appeals. The possibility that an interlocutory ruling could be dispositive of all claims and avoid substantial time and expense is enough to justify an immediate appeal. *See, e.g., Kennedy v. Villa St. Catherine, Inc.*, 2010 WL 9009364, at *4 (D. Md. June 16, 2010) ("It is immaterial that other possible outcomes exist" on appeal because "it is enough that appeal may lead to a possible terminus for the case.").

On the other hand, if this Court does not resolve the standing issue now, but waits to decide the issue until after a final judgment, "much time, expense and effort" could be "needlessly wasted." *In re Va. Elec. & Power Co.*, 539 F.2d 357, 364 (4th Cir. 1976). The parties could undertake years of expensive discovery and briefing on the merits, only to learn that Plaintiffs should never have been able to advance their claims in the first place. That would have wasted not only the parties' resources, but also scarce judicial resources. *See Kennedy*, 657 F.3d at 196 (explaining that one purpose of interlocutory review is to avoid proceedings that "waste judicial resources and place additional burdens on . . . district and appellate judges").

20

No matter how the Court resolves the issue on interlocutory review, it would materially advance this litigation. If the Court holds that Plaintiffs failed to plead an Article III injury, then the complaint would be dismissed. Certification Order 9. If Plaintiffs then seek leave to amend the complaint, they would do so with guidance from this Court about what types of allegations suffice to plead an injury in fact, which would "simplify the trial and make discovery easier and less costly." *Id.* at 10 (internal quotation marks and citation omitted).

Conversely, if this Court concluded that Plaintiffs have pleaded an Article III injury, that decision would inform what Plaintiffs must prove at later stages to satisfy their Article III burden. Article III injury is not a "mere pleading requirement[] but rather an indispensable part of plaintiff's case," so "it must be supported in the same way as any other matter on which the plaintiff bears the burden of proof"—"with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Thus, whatever the outcome, "a ruling from [this Court] on the viability of Plaintiffs' claims" could "substantially shorten the litigation." Certification Order 10 (citation omitted). Particularly since the issue here is a threshold jurisdictional issue, this Court should weigh in now.

## CONCLUSION

The Court should grant the petition for permission to appeal and reverse the district court's denial of Lockheed Martin's Rule 12(b)(1) motion to dismiss.

Dated: August 1, 2025

Respectfully submitted,

/s/ Michael E. Kenneally

CHRISTOPHER J. BORAN
SAMUEL D. BLOCK
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, IL 60606
(312) 324-1000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5893

NICOLE A. SAHARSKY
REGINALD GOEKE
E. BRANTLEY WEBB
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
 (202) 263-3000

NANCY ROSS
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-8788

*Counsel for Defendant-Petitioner Lockheed Martin Corporation*

22

**CERTIFICATE OF COMPLIANCE**

1.    This petition complies with the type-volume limit of Federal Rule of Appellate Procedure 5(c)(1) because this petition 5,112 words, excluding the parts of the petition exempted by Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(f).

2.    This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 MSO in 14-point Times New Roman font.

Dated: August 1, 2025                    /s/ Michael E. Kenneally
                                         MICHAEL E. KENNEALLY

                                         *Counsel for Defendant-Petitioner*
                                         *Lockheed Martin Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2025, I electronically filed the foregoing Lockheed Martin's Petition for Permission to Appeal the Grant of Class Certification Pursuant to 28 U.S.C. § 1292(b) with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system.

I further certify that on August 1, 2025, the foregoing document was emailed (with consent) to the following case participants:

Elizabeth Hopkins
KANTOR & KANTOR LLP
9301 Corbin Avenue, Suite 1400
Northridge, CA 91324
T: (818) 886-2525
ehopkins@kantorlaw.net

Jerome J. Schlichter
Sean E. Soyars
Kurt C. Struckhoff
SCHLICHTER BOGARD LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
T: (314) 621-6115
jschlichter@uselaws.com
ssoyars@uselaws.com
kstruckhoff@uselaws.com

Cyril V. Smith
ZUCKERMAN SPAEDER LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD 21202
T: (410) 949-1145
csmith@zuckerman.com

Bryan M. Reines
2100 L St. NW, Suite 400
Washington, D.C. 20037
T: (202) 778-1800
breines@zuckerman.com

*Attorneys for Plaintiffs*

/s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Defendant-Petitioner*
*Lockheed Martin Corporation*